The clerk will call the first case. Good afternoon, everyone. Welcome to the Illinois Appellate Court, 1st District, 6th Division. We'll ask that the lawyers who are going to argue please step up, introduce themselves, and tell us who you represent. Daniel Hawkins on behalf of the Plaintiff Appellate, Access Realty Group, Inc. Good afternoon, Your Honors. My name is Robert Chapman. I represent the defendant appellee, Patrick Kane, and I also represent the defendant appellees, William Kane and Victoria Goldblatt Kane. Is anybody going to be arguing on behalf of Richard Bancroft? Your Honor, I'm Patrick Goldman, and Patrick Goldman on behalf of 1st District, West Bay, Access Realty Group, Inc. Understood. Under Illinois Supreme Court Rule 352B, each side has about 20 minutes for the main argument, and the appellant has 10 minutes for rebuttal. We may change that if we have a lot of questions or if the argument becomes repetitive. Please remember to speak loudly. Our microphones don't amplify very well, and it's basically here for purpose of the tape recording. Please understand we have read the briefs. We are very familiar with the facts of the case, so devote your time to your strongest arguments. And with that, Mr. Hawkins, you may begin when ready. Good afternoon, Your Honors, and thank you for granting me the opportunity to argue my client's case today. These appeals concern the discharge of a final judgment with an unadjudicated promissory note. The first appeal is from the supplementary proceedings where the satisfaction of judgment was entered. The second appeal is a fraudulent transfer case that was dismissed based upon the satisfaction of judgment. So the controlling issue is going to be the satisfaction of judgment, and that's where I'll focus my argument. At its core, that satisfaction of judgment was a set-off of an unadjudicated promissory note against a final judgment. Was it a set-off or was it security? Which is a better characterization? Regardless of the label that we're using to describe the legal theory to achieve the ends, the result is that you took a dollar from a promissory note and you applied it against a dollar under a judgment. That's the set-off. And that result is the standout feature in this case, which is going to set it apart from every case that was cited by the trial court or cited by the appellees. So your position is that's what the circuit court did, was treat the note as a set-off against the judgment. So the legal doctrine that the circuit court used was the merger doctrine. More specifically, we should call it the merger of charges doctrine or the merger of liens. But the effect of that merger was to take one debt and apply it to another. There were no property interests that were merged, because if you look at the merger doctrine, what the result of the merger doctrine always is in these cases that applied it, is that you have one party who is the fee-simple owner of the property. That party acquires a mortgage, typically a mortgage, maybe some other type of lien on the property. Does the merger doctrine only apply to mortgages? Is that your argument? I think you could have – no, it does not. The merger doctrine only applies to property. Could it apply to personal property? Maybe, but I've only seen cases that apply it to real estate. But if you look at the source, it only applies to real estate. But the charges that I'm talking about can be any encumbrance or a junior type of estate, something that is a lesser estate, the fee-simple. So maybe a mechanics lien, different types of lien on the property, a judgment lien could be included. But typically what you're going to see is a mortgage being merged into the fee-simple estate. And in those cases, when that occurred, what you end up with is a party that no longer has their mortgage, but they still have their fee-simple ownership in the property. In this case, what we have is a judgment creditor who lost their judgment, and then the promissory note was returned to the debtor. That's not supported by the merger doctrine or any other legal theory. Their position, and what the circuit court seemed to reach as its analysis, was that you're basically trying to collect a debt from yourself. Because on the one hand, you've got the corporation, which is a sole one-person corporation, and you've got the gentleman involved personally. Right. And please help me through the economics of this. Why is someone trying to collect what's essentially their own debt? Why is everybody else fighting about that? Understood. So Access Group was in the same position as any other creditor that might have acquired that judgment. They had a few options. One option was to hold on to that promissory note as security for payment of the judgment. Another option was to hold the UCC sale or turn it over to a shareholder sale, at which point it would be sold.  Or maybe even Access Group credit bids its judgment to acquire the note. And then the last option, of course, is that Access Group files a lawsuit against its sole shareholder to collect. But the mere fact that Access... Wait a minute. Yes? Access and Platt, it seems like their interests, everything seemed to be so united. The sole shareholder, Platt's president, the secretary, the registered agent. I mean, it seems like after a while they just melded and became one and the same. I don't think that's fair characterization. Well, convince me why it's not. So these are simple lending proceedings. There could not have been a piercing of the cork of oil from a creditor against a debtor,  Access Group is a legitimate corporation that is a licenses-managing broker. They've been in existence since the late 90s. So this isn't something we set up overnight to acquire a judgment and get a hold of the promissory note. We're not talking about Access being in the position where it has to sue its sole shareholder. We're talking about Access acquiring a judgment against the debtor. That wasn't my question. What? My question had to do with the uniting of the qualities of these two separate entities so that they're almost, not almost, they're one and the same. I mean, why is that? Based on these facts, that's what it looks like to me. So uniting of the entities, uniting of Access Group and Bill Platt? I'm asking the question. I'm trying to figure out what the question was. I'm sorry. So, okay, so even if you're going to assume that Access Group, Bill Platt are the same entity, their interests are exactly aligned. I think if Bill Platt came into this case and he were the creditor and he did the exact same thing, there was still no merger. The reason there was no merger is because Access Group is not the owner of the promissory note. They hold on to it as collateral for payment on the judgment. The difference there is you, the promissory note is returned to the debtor. It's not the property of the creditor, which takes us away from the merger doctrine because we don't have an ownership interest in the promissory note. What we have is just two offsetting debts, and one of the debts is held by the judgment creditor as collateral on the payment of that judgment. Even if you're going to equate Bill Platt with Access Group, you cannot equate an unadjudicated promissory note with a judgment because that promissory note is still subject to affirmative defenses. It hasn't been proven up in trial court, and there's no guarantee that the debtor is successful on proving the debt outstanding. So you cannot equate a dollar due, purportedly due under a promissory note, with a dollar due under the judgment. Before we went on that track, I asked a question I'm not sure you answered. I was asking, explain the economics of the situation. If you have, on the one hand, the entity that holds the note is Access, correct? That's who holds the note right now. Yes, sir. And then? Well, not right now. They didn't hold the note. They had a right to enforce it, and they had the right to hold it as security until the judgment was paid. And if they had collected under the promissory note, it would have been… But at some moment in time, they did, correct? Yes, but I don't think it's fair to say they held it, because it's not an ownership interest in the note. It's held as collateral. Yes, so the economics are… And the position of your opponents and of the Zero Court was, at the moment that they took the note for purposes of collateral, using your words, that there was a snap of the fingers, and instantaneously it dissolved, because at that time, both the debtor and the creditor were the same by virtue of basically the one-person corporation versus the individual. Right. And therefore, later on, when the interest became severed or transferred in the note, it no longer was a note that anybody owed any money on. Yeah, but that's… In the beginning, that's basically what happened. That's not what happened. Okay. So, unfortunately, the position we're in now is Access Group lost their approximately $500,000 judgment. This $500,000 was credited against the note and then returned to the debtor. The debtor has now filed a lawsuit against Platt. That's pending. There's affirmative offenses. But our position is that note is… There's no money from the Platt's position. There's no money due under that note. It's a bogus note. He's got fraud offenses. He's got, you know, other defenses to stop the enforcement of that note. There's no money due under there. It's just a claim for money due. We don't put any… There's no value to assign to that. And it definitely does not have the same value as a final judgment where that money… There's no defense to that money being due. Money was owed on that judgment. And we lost it up in smoke. And so I think another… So a symptom of error committed by the trial court is now that we've lost a judgment. And there's a promissory note that may or may not be enforceable. If it's found to be unenforceable by the next trial court now, my access group has no way to…no recourse to revive that judgment. It's over. Judgment's gone. And you potentially have conflicting judgments at that point. Because, you know, part of what we have in front of us is this 12-183 proceeding where the court determines whether or not a judgment has been satisfied. Correct. So if Glenn is already a debtor and then somehow a thruway access becomes the creditor on that note, how does merger not apply? I don't understand that, frankly. I want to give you an opportunity to convince me. Okay. Merger does not apply because that note has not been proven that it's valid and that there's a debt due. That is the difference. And even if…so there are set-offs under the law. There's set-offs under Section…I believe it's 1…I can find it in a second. Under 177, 2-177 of the Civil Procedure Code, what we have is there's permissible set-offs of judgments against judgments. Because they're both…we have mutuality of debt at that point. They're both the same. You know, we have undisputed amounts due. And those can set-off if certain elements are met. But there's no merger in this case because the merger that we're talking about is a merger of different interests or property interest…interest in property, right?  And then at that point, the owner owning the property and having a mortgage, there can potentially be a merger of the interest. And so in that case, what you end up with is the fee-simple owner just ends up with clear title to their own property. But there's exceptions to that, too. And the merger doctrine says you have to look at the intent and whether or not that party intended for the merger to occur. But there isn't a merger of interest as soon as you have a party being the borrower and the lender. That's just not the rule. What that is is a sound bite from some of these old cases. Back in the 1800s when the Supreme Court would write their cases, they didn't always recite all the facts. Sometimes you had like a syllabus… But what factors exist that show this intent was not intended? So the strongest factor is that ACCESS continued to try to collect the judgment. It's not…if they would have just asked that the judgment had been expired and it's over, then there's…it shows intent that they assumed everything had merged. The fact that we continued to try to collect it, the fact that I sent a letter to opposing counsel proposing a new CC center of remote, that shows we did not intend a merger. I want to talk about…I want to talk about the standard of review in this case because I think it's one of the most fascinating issues and potential for us to correct what's kind of a conflict between the current use of discretion standard that's being applied and what the Supreme Court has said. If you…if you look at all the cases cited by the appellees that say abuse of discretion applies to our 183 proceeding, what those are relying upon is the Meijer…the Meijer opinion from the 2nd District. The Meijer opinion was their…their rationale was that we will use the abuse of discretion standard because that's the standard that's used in a 1302 petition to vacate hearing. Since that time, we have people…Vincent, the Illinois Supreme Court case that says, no, abuse of discretion doesn't apply to all 1402 proceedings. We treat it like any other hearing. If what the trial court hears is evidentiary…I'm sorry, documentary evidence and doesn't hear live testimony, then we're going to use the de novo standard. And so if Meijer rationale is still good, that we want to use the same standard of review for a 183 hearing as we do for a 1402 or 1401 petition, I'm sorry, then…then you should be using the de novo standard of review because there was no live testimony in this case. It was simply documentary evidence. And I think that brings it in line with that one also, which was the…the case about a turnover proceeding and supplementary for a citation to discover assets. It's a judgment collection. They used de novo when there was documentary evidence. So I think that's the correct standard. Going back to the economics and kind of the merger, why this isn't merging and happening, we weren't… Access wasn't in a position where it had gained some nefarious advantage and the debtor was at, you know, an unfair disadvantage. Access held on to the promissory note and if debtor wanted it back, pay the judgment. You can have it back. There was nothing inequitable about requiring a debtor to pay his judgment. There was nothing that required the judge to fashion a new…a new remedy in this case. They could have…we should have had…the judge should have ordered or could have ordered a sale of the note. And that would have satisfied everything. It would give him the debtor the opportunity to receive value for whatever the fair market value of that note is and would have…it would have avoided, you know, any of this purported inequity. And that's exactly what I had proposed, which was ignored by the debtor's counsel until new counsel came in and filed a motion to dismiss. I want to reserve five minutes for the end. I'm not sure. We actually give you time at the end. But, I mean, Mr. Hawkins, going back to the many sordid years I spent doing mortgage foreclosure on the 28th floor, you know, we have the doctrine under the Uniform Commercial Code that, you know, a note is an instrument to borrow money. And the holder of the note, basically the lender, can enforce the note. Or someone acting on behalf of the lender or someone to whom the note has been assigned because the note is a negotiable instrument. It can have a paper trail and transfer between two, three, five, seven different entities and each one becomes the successive owner. And anybody acting on their behalf can go and enforce the note. Is it your position that when the note fell out of the sky into the hands of access, by virtue of it being the collateral, that one of those rights transferred, it was simply just held there so that no one else could get rid of it, you know, basically to preserve something? You know, like if you would transfer, you know, a physical asset as collateral for your debt. So is that... You talk about a future sale of the note, right? Yes. And if the debtor had a problem with that, I think, you know, the case is, I think, Policar, you can force a sale of that asset and say it's inequitable for the creditor to have it. So was the note, after the court entered the order, basically saying, all right, the note's going to get held as collateral, was the note ever endorsed in any way over to anybody new or... No. Was it physically transferred in paper form to someone or... No, I don't think they ever found the original. So all we have is an order saying that, you know, writing title of interest is transferred over to the creditor until the judgment is satisfied is what the order says, but there was no endorsement of that note. I think we're... I think part of the problem is when you look at this case and you think maybe a merger should occur is that you've got to view it from access standpoint. This note is not worth anything. We had a judicial ruling against all personal assets of the debtor. We had bank accounts. We found, you know, over a million dollars in transfers in violation of a judicial ruling. I was going hard to get that money back. This note was not even on our radar at that point. We were trying to collect, and we got hit with this motion to dismiss for merger. But the note, it had sat with the prior creditor for a year with nothing happening. We've got about two minutes left. Okay. Can I reserve that? Sure. All right, thank you. Okay. Mr. Chatman. Thank you. Let's just get organized for one second. Good afternoon again. Robert Chatman, Your Honor. I think, Your Honor, hit on a lot of key points that we would address, and I think Mr. Hawkins has understated the order that Judge White, the turnover order, which is at page 60 of the appendix. All of the bundle of rights in the note were transferred to the judgment of creditor. I believe that might have been what you were saying, Your Honor. To Mr. Hawkins, you may ask him. The right to enforce, the right to collect, the right to assign, the right to do all those things. Where it says is, where Judge White limited it, because it's a one, on its face, it's a $1.2 million note. I'll address Mr. Hawkins' defenses in a second, but on its face, it's a $1.2 million note, and as Your Honor stated, it's a negotiable instrument. The SFG judgment, as we call it at that time, was approximately $527,000. So the note was in excess of the judgment. Had it been partially satisfied? Excuse me? Had it been partially satisfied? The judgment? Yes. They had reduced it. Mr. Cain had reduced it by approximately $200,000 at that point. So what Mr. Hawkins is leaving out of the order is that Judge White said, all right, title and interest transfers to the judgment creditor, all the bundle of rights, and you may, judgment creditor, enforce the note up to the value of the judgment, up to the $527,000. The outstanding balance on the judgment. Exactly. Yes, Your Honor. He did not say $527,000. You're exactly right, just up to the balance. So I think it was obvious to us when we came into the case that here we have Mr. Platt, through his company access, with Mr. Hawkins going full force against Mr. Cain and Mr. Cain's bank and Mr. Cain's insurance company. Why did Mr. Platt do this? Why did Mr. Platt, through his company, of which he's the sole shareholder and all of those points Your Honor raised, why did he acquire this judgment and then just let the notes sit there while he goes full force on every aspect of Mr. Cain's life? That's what the law of the doctrine of merger is for. There is no reason not to apply it outside of the real property setting. Now keeping in mind that the real linchpin of this case is the application of the doctrine of merger, and the case law that we seem to be, that is presented before us, deals with a little bit of a twist to that, where it's exactly the same legal entity on both sides. Here we have a person, an individual, a natural person on one side, and we have a corporation on the other side. And we all learned in corporations in law school that a corporation is a legal entity separate and apart from its shareholders and directors. Are we blazing a new trail here by suddenly saying that now they're the same person, we can pierce the corporate veil to effectuate this merger? I don't believe we're blazing new territory, Your Honor, to answer your question. Well, how are they one and the same for purposes of the merger doctrine? Because, Your Honor. He asked you the question that I was about to ask. And Justice Kennedy said it much better than I did. And I thought the reason why, Your Honor, is because what the court in the exercise of both Judge White as the court supervising the supplementary proceeding and as the court has long held, there's both an equitable and legal component to that. And under the equitable doctrine of merger, what you're looking at is who is in control of the note, who is in control of both sides of the instrument. And what the record presented to Judge White, what was undoubtedly, was incredibly clear, was that Mr. Platt, through his corporation, had acquired the judgment, put himself as the creditor of the note of which he was the debtor of the note. And that's where Judge White, under the doctrine of merger, can look at those circumstances and say, Your Honor, who is in control here? And I think we would all agree that the person in control here was Mr. Platt. But would a different result attach if instead of owning 100% of the stock in the corporation, the person in question only owned 51%? I think, Your Honor, I haven't considered it. I understand the question. I think it depends on the circumstances of the case. Here it's so clear that the person is so in control that it was appropriate for Judge White to, in exercising his equitable discretion under the doctrine of merger and under the 150 years of Illinois law as to his role as the person deciding whether the judgment was satisfied, to make a determination that the same person was on both sides of the transaction, that the note up to the amount of the judgment, that the merger occurred, and that the note up to the judgment was extinguished. And as a result, the judgment was satisfied. What is the best case you could give us for the proposition you are pressing at this time to the effect that the solely owned corporation becomes the equitable equivalent of the person? Because I don't think we cited – I'd have to think, Your Honor, and I understand what you're saying. I don't know if we cited one in our brief. The closest thing we may have is sort of the whole realm of piercing the corporate fail cases. Right. But those hinge on a whole different doctrine where the corporate formalities are not being followed. Right. You know, there's multi-part tests. But the policy that applies is the same. That is the person in Mr. Platt's position using the corporation, using the shell of the corporation for an unjust result, and that's one policy of the corporate bill. And I agree with what you just said, those factors we never presented. I – you know, was he using the corporation for his own account or something like that? We never presented that. But the Court, in the exercise of its equitable discretion, could at least lean on the underlying policy and see who's in control here. All right. Thank you, Your Honor. I might have just covered my whole outline. Let me – I'll start again. Well, you're never going to be penalized for saying too little or saying less. Of course. Less is sometimes more. Right. Your Honor, in going back to Your Honor, Justice Cunningham, your original question, which is, is there a reason why we should – does this only – does this only apply to real property? Well, I think that that's your opponent's argument. Right. And there's been no case in Mr. Platt or Mr. Hawkins' case, no case where a court found that under these circumstances where a party has come to be – the interest of the obligation of unified – the interest of creditor and debtor have unified in the same person, that the doctrine of merger is not going to apply. And it goes to what you were asking, Your Honor, about the economics of it because it's very clear what the economics were. Mr. Platt wanted his cake and he wanted to eat it too. He wanted to send Mr. Hawkins out there. He wanted to, as we said, serve citations on everybody and have the note sit there. He tried – he intervened in a court to prevent Mr. Kane from trying to enforce the note. He was very aware that the note was sitting there. And what the court – the doctrine of merger says is – and you said proof, Your Honor, and you might have said that, but that's exactly what occurs here. Once they come together, the extinguishment occurs by operation of law. And the cases say this immediately. Mr. Kaplan, give me some specific examples of why you say the interest of unified on both sides. Okay. In the same person. It's very specific. Okay. Well, here you have the person who has the right to enforce the lien as a result of Judge White's transfer turnover order is the judgment creditor. The judgment creditor here is the sole shareholder, officer, secretary, registered agent is Mr. Platt. Mr. Platt is the – And yet you have this separate corporate entity. You have a separate corporate – and that's the stick in the mud here. Your Honor, and that's why the issue – the cases say the focus is on the control. Where does the control lie? The facts show or tell us what actually happens supports the conclusion that Judge White reached that the control lay in Mr. Platt's possession. And, yes, I can't argue with you. You have a corporation. All right. But you have a corporation. I can't say anything to that. But that you have the – how the – there has to be room for the judge in Judge White's position, again, who's supervising the rule, the 270, the supplementary proceeding, to exercise his equitable control over how a judgment is satisfied here. And on the evidence presented to him, and as I think we would all agree, the person who was in control of the note was Mr. Platt. And at that point, the story should end because that's – Is being in control of the note enough? Yes, Your Honor. Why? It has to be because he's now on both sides of the transaction. Once you're on both a creditor and debtor of the transaction, the law recognizes going back forever and continuing to today that the creditor is not going to sue the debtor. That's why it goes back in the – it goes back to the late 1800s and continues through the Osiris case. Because you cancel yourself. Not only – right. When you ask economics – As Justice Harris pointed out, you have a person, a legal person, which is a coffered entity, and an actual person. Doesn't that make a difference? If you're asking – and I'm trying to – I think I've expressed to you, does it – could it normally make a difference in a different setting? Yes. In this setting, it doesn't make a difference because it's up – it's within the trial court's examination. You're saying the merger doctrine is fact-specific, and under these facts, it applies. That's what – yes, Your Honor, exactly. And that's the discretion that is left to Judge White to make that decision, that we have to, I would respectfully submit, defer somewhat to him in his examination of those circumstances. There was no – the benefit that Mr. Platt received is real. He received a $520,000 – $527,000 credit against a notice. Assuming the note is collectible. Now, and that's the second point, Your Honor, which is this, that I was going to address, which is because you can't sue yourself, once you put yourself in that position, it was clearly his intent to put himself in the position to be both in control of the judgment and in control of the note. He used a real estate corporation, of which he's the sole person, sole everything, to acquire the judgment. And you can see there was some strategy involved in doing that, or else they would have just had him do it. But there was obviously a strategy of using the corporation to do it with full knowledge that the note was there. As it seems to me like you have a situation where you have to say, yes, this corporation existed. It was separate. Notwithstanding, he's the sole shareholder, the sole director, whatever. It seems that now you're pitching an equity argument. Okay. Disregard that corporation. It's the same guy. I'm saying – Am I correct? Yes. I'd like to – I'm sorry, Your Honor, if I interrupt. Proceed. I want to respond to that and to follow up on the point that Justice Cunningham made, which is it's the trial court that's looking at the facts and circumstances. Remember, it goes back 150 years in Illinois law that it is the trial court in the exercise of its legal and equitable discretion who determines whether the judgment has been satisfied. And it's the trial court who is looking – and I just had made some notes before. Inherently, the trial court's determination was a determination. I'm being circular here, but Judge White decided that the corporation was the same as the person. That's a decision of law, and an error of law is an abuse of discretion. Are you asking me that? I'm just saying that an error of law is an abuse of discretion. We deal with that all the time around here. I agree with you. Someone told me not to say I don't disagree with you, so I agree with you. So we have to get ourselves comfortable with the legal position that the corporation here is the same as the person for purpose of the Merger Act. And, Your Honor, I'll go back to the Sandberg decision from 1876. It said the trial court, in supervising the – this would be in the post-judgment, if I didn't have supplementary proceedings then, or maybe they did – has the power in all cases to compel credits on judgment or executions where it would be illegal or inequitable to proceed to collect the amount claimed. That's a pretty heavy statement there. And that's been our law for 150 years in this state, repeated over and over again. So I agree with you, Your Honor. It is – I agreed with your statement. But I believe that, as Justice Cunningham said, it was under the circumstances for him to examine. And would it not be inequitable for him? Wait a minute. I didn't say that. I asked you. Yes. I apologize. Yes. And I – that is my – yes, I apologize, Your Honor. I don't mean to put words in your mouth. But that is – that was my – the point, that it was for Judge White to decide whether or not it would be inequitable to proceed to collect – You have five minutes left. Excuse me? You have a couple minutes left. Okay. Well, I'm just going to check with my co-counsel and see if I left anything out. My colleague, Mr. Shapiro, raises a good point to me, which is we could – as the sole shareholder, he still controlled the note because he would still have to make the decision to sue himself. And that's where, again, the doctrine of merger says we are not going to be in a situation where we have, I believe we quoted in our brief, the domitus litis, to use that phrase that I think goes back to the late 1800s with the U.S. Supreme Court. We're not going to have the domitus litis on the same side in a lawsuit. And that's what he would have to do. He would, as – he, as the sole shareholder, controlled the decision of that entity to sue himself. And that's when we, again – and then I'll sit down – is that the focus is on the control of the obligation. And the law is – not the law is clear, but the law has stated that and expressed that in the doctrine of merger. Who is in control of the obligation? In this case, the same person was in control of the obligation. Unless there were any other questions you'd like to ask, I'll sit down. Okay. Thank you, Mr. Chairman. Thank you. Mr. Hawkins, you're back up. Mr. Hawkins, I have a question for you. Other than suing himself, was there any other way to collect on this debt? On the judgment? There certainly was. On the notes. Yes, the note had security. There were UCC security interests in some of Platt's membership interests in LLCs. So there were other ways that he could have forced a sale, I guess, of the collateral underlying the note and got money that way. But other than collecting a note, he could have been sold at a sale, which is required, because the court in the supplementary proceeding cannot physically take assets of the – unless it's cash or money in account – cannot take the assets of a debtor and hand it over to the creditor. The rule is it has to be set for a sale, either by the sheriff, or some alternative means of the sheriff is not the appropriate one to conduct the sale. That's in Section 1402. So we know that. We know that the judge could not have just handed the note over to Access Group, and that's not what occurred. It was sent over to Access Group as collateral, and they had the right, if they wanted to, to either sell it, hold on to it, or collect from Platt. I want to address some of the points raised by Mr. Chapman. The unjust result in Wynne Farmer's case goes to the debtor, because what he's done is he has discharged a judgment with a bonus note that's unproven, that's still subject to these defenses, that it is just not the same as the judgment. The merger doctrine has been in place for 150 years, and yet there's not a single case, single case sent by the appellees where a judgment or other debt was discharged dollar for dollar with a different debt. What you see in all of these cases is an owner with a lien on real estate. That's all there is. That's what the merger doctrine is. The Illinois Supreme Court has told us it's disfigured, so we should not be expanding it now. In a new type of relief, when you're disregarding a corporate entity and saying, because, hey, technically, you know, Bill Platt was the borrower on this one asset that got turned over, the whole judgment's gone now. We're just going to apply dollar for dollar the debt that's allegedly outstanding. I heard a lot about equity, you know, equity to disregard the corporate veil. This was an equitable remedy, but if you look at their motion to dismiss, it didn't request any equitable relief. It said, at law, happen immediately. This isn't equity. This was just a mischaracterization. But they cite a case where I assume it's the Illinois Supreme Court at some point said it was in determining whether or not a judgment has been set aside, the court uses some equitable principles. It does, but that has to be requested. You can't just grant it. I should have had the opportunity to respond and said, no, there is no equity available here because you can sell the note. There's no prejudice. Get rid of the note. Don't oversell or dump, and I can go on about collecting my judgment because that note is not worth 1.2. It's valueless. It sat with the prior creditor for a year. No collection occurred. There was no issue there until the access group comes into the case. And if we're going to limit, you know, the holding to the facts in this case, I mean, what do these facts say? It says when a creditor receives the turnover of some kind of claim against an affiliate of the creditor, then there can be a discharge pro tato with whatever that debt is. That is not a solid holding. That's not a good rule to make. And did anybody wave their hand in the air to Judge White and say, hey, you can't enter an order like this just transferring the note. You've got to hold a public sale so as to ensure the highest possible price for it. At the time, I don't think anybody believed that the note was actually transferred. They were good. Everyone understood that it's just being held by the creditor and they have the right to sell it. Your opponent disagrees about that. Oh, no, no. It's right in their brief that it was being held as collateral insecurity for the judgment. I mean, that was never argued that, you know, that somehow SFG became the owner. SFG was a predecessor. SFG somehow became the permanent owner of that note. That was never proposed because that would have been fair, and that's not what the statute allows. Unless you guys have questions. I'm finished. Justice Verrilli. Thank you. Thank you for your arguments. It's a very interesting case. The court will take the matter under advisement. And there will be no other cases on the agenda for today. The court will stand in recess.